No. 23641.

Tommy Arnold Lanford and Benny Claude Valdez *v.*
The People of the State of Colorado.
(489 P.2d 210)

Decided October 4, 1971.

110

GEORGE E. SMITH, for plaintiffs in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, GEORGE E. DeRoos, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE plaintiffs in error were defendants in the trial court, and will hereinafter be referred to as defendants, or as "Lanford" and "Valdez." Defendants were convicted by a jury of aggravated robbery, assault with a deadly weapon, and conspiracy to commit those offenses. Their Motions for New Trial were denied and each was sentenced to concurrent terms in the Colorado State Penitentiary. The sole error relied upon under the Writ of Error issued out of this Court to review the convictions is that certain exhibits were erroneously received in evidence over defendants' objections. Defendants were tried together, represented by the same attorney, and the objections to the incriminating exhibits were essentially the same for each defendant.

On the morning of September 5, 1967, a restaurant and bar was robbed by three apparently armed men who were wearing masks, striped overalls, caps and brownish, tight-fitting gloves. Police Officer Koncilja was given this information, together with a general description of the

height of the suspects. Some days before, Officer Koncilja had contacted three individuals in an automobile, and had noted a pair of unusual gloves on the back seat of the automobile, similar to those described as worn by the perpetrators of the robbery. One of the individuals was known to him to be Valdez. With this and other general information, and the fact that the three matched the general height description, Officer Koncilja attempted to contact Valdez after receiving the robbery report. He first went to the residence of Valdez's father, who told him Valdez was not there, and together they went to the residence of Valdez's step-brother. The evidence is in conflict as to the details of what occurred in obtaining entry to the apartment residence of the step-brother. The original entry into the apartment was for the purpose of locating Valdez, and was made with the consent of the step-brother. Valdez came from the livingroom into the kitchen, into which latter room the initial entry had been made by the officer and Valdez's father shortly after the officer and father entered the apartment. Valdez returned to the livingroom. The officer heard a noise and followed Valdez into the livingroom where he observed the leg of another individual who was apparently hiding behind the couch. He also observed a woman's silk stocking knotted in such a fashion as to be usable as a mask. Valdez stated to the officer that he had just gotten up, but the officer noted that his shoes and stockings were on, and the shoe strings tied. The officer drew his revolver, placed Valdez under arrest, and ordered the individual behind the couch to come out. The individual emerged from behind the couch and was also placed under arrest. This person was later identified as Lanford. The trial judge held that an arrest occurred at this point, and that such arrest was valid.

After careful review of the record, we agree that the circumstances were sufficient to justify the officer's reasonable belief that the defendants had participated

in the felony which had admittedly taken place. At what precise point the officer's hunch became suspicion and then progressed to reasonable belief is impossible to say with certainty; however, at the time the arrest was made, the circumstances were sufficient to justify the trial court's finding that probable cause existed for the arrest. *See People v. Lujan,* 173 Colo. 77, 475 P.2d 700 (1970); *People v. Martinez,* 173 Colo. 17, 475 P.2d 340 (1970); *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236 (1965).

Thereafter, the officer asked the father to summon aid, which was done. The premises in which the defendants were apprehended, the livingroom, and the area in which Valdez was first observed by the officer, the kitchen, were searched with some thoroughness.

In that connection, at the hearing on the motion to suppress, three officers testified that the step-brother had freely consented to the search when inquiry was made as to whether or not they should obtain a search warrant. The arresting officer testified as follows:

"And in the presence of Officer Crowell, I again asked Mr. Henry Salinas if we could search his apartment, and again Mr. Salinas' reply to me was, 'I have nothing to hide from you. I have done nothing wrong. You can look anywhere you want in my apartment, because if you find anything, it's not mine. I didn't do anything wrong. I didn't break any law.' "

Substantially the same version of the purported consent was furnished by the other two officers who likewise were at the scene. The court made a finding that although there was some confusion about the matter, consent could be construed by the actions, motions or "sayings" [sic] of the parties.

The threshhold question is whether the defendants, who were not residents of the apartment searched, had standing to object to the search conducted at the step-brother's (Henry Salinas) apartment. In *Jones v. United States,* 362 U.S. 257 80 S.Ct. 725, 4 L.Ed.2d 697, the United States Supreme Court laid down broad guide-

lines delineating the range of ownership or interest of property which will give the holder the right to protection under the Fourth Amendment. In that case, Jones was using the apartment of a friend with permission. He kept clothes there and had free use thereof through a key. Upon Jones' arrest, the police searched the apartment and found narcotics which they then sought to introduce as evidence against him. The prosecution based its arguments on earlier decisions which held that an accused person must either have owned or possessed the property seized or has a possessory interest in the searched premises greater than that of a mere invitee or guest. *Accord, Alderman v. U.S.*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■■ The Court held that such distinctions should be discarded, declaring such differentiations to be "only of gossamer strength," which "ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards" and that *"anyone legitimately on the premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." Jones, supra, passim.* (Emphasis added.) The defendants, therefore, had standing to object to the search of Henry Salinas' apartment, but it was to no avail because there is additional law that when two or more persons have equal right of ownership, occupancy, or other possessory interest in the premises searched or the property seized, any one of such persons may authorize a search and seizure thereof thereby binding the others and waiving their rights to object. As stated by the United States Court of Appeals for the 10th Circuit:

"The conclusion is then that the present posture of the case law vis-a-vis the Fourth Amendment appears to be that the right is personal, but when two people have a property interest in the property to be searched, the waiver of the personal Fourth Amendment Rights of one party may act as a binding waiver of the personal rights

of the other party." *Anderson v. United States,* 399 F.2d 753 (10th Cir. 1968).

*See also, Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Spencer v. People,* 163 Colo. 182, 429 P.2d 266 (1967). *Accord, White v. U.S.,* 444 F.2d 724 (10th Cir. 1971).

■ The record is clear that Henry Salinas was a resident in the premises searched. Without making a determination as to the nature of the defendants' interest in the property, we conclude that Henry Salinas clearly had the ability to consent to a search of the premises. *See Spencer v. People, supra.* The search, therefore, was not illegal.

The judgment of the trial court is affirmed.

JOHN B. BARNARD, District Judge,* participating, concurs in the result.

MR. JUSTICE LEE not participating.

---

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.