574 P.2d 866 (1977)
PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Joseph Edwin HINCHMAN, Defendant-Appellant.
No. 76-697.
Colorado Court of Appeals, Div. I.
August 25, 1977.
Rehearings Denied October 13, 1977.
Certiorari Granted February 6, 1978.
*867 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., James S. Russell, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Joe Clarence Medina, Charles F. Murray, Denver, for defendant-appellant.
COYTE, Judge.
The defendant, Joseph Edwin Hinchman, appeals his conviction on charges of first degree arson and conspiracy to commit arson. And, for the first time in the prosecution, the People now seek to attack the sentence imposed against defendant. We affirm the judgment.

I
Defendant first contends that the trial court erred in denying defendant's motion, made during the trial, to suppress as evidence a gasoline can discovered at defendant's residence. There was no error.
Pursuant to a valid warrant, police officers searched defendant's home on March 20, 1975. The officers located and seized several gasoline containers, including the can in question. However, even though the item was listed in their return and inventory, the officers inadvertently left the container behind on the premises.
Becoming aware that the container was missing, the officers returned to defendant's home on the following day and placed tape over the mouth of the can to prevent any vapors therein from escaping. Subsequently, on March 24, defendant's then-estranged wife and a joint owner of the property visited the residence and observed the container in the garage. Mrs. Hinchman testified at trial that during a telephone conversation with one of the police investigators, she inquired of the officer why the gasoline can was still located in the garage and was informed that the police had mistakenly failed to transport it with the other items seized. Mrs. Hinchman stated that she thereupon volunteered to deliver the container to the officers, and later did so.
Although defendant did not move to suppress the container until the trial was in progress, the trial court in its discretion permitted defendant to argue the motion. See People v. Stevens, 183 Colo. 399, 517 P.2d 1336 (1973). Following an in camera hearing, the trial court found that defendant and his counsel were aware prior to trial of the means by which the police had obtained the container and, consequently, that the motion was not timely filed.
*868 Defendant now maintains that regardless of his knowledge of Mrs. Hinchman's role in producing the evidence, neither he nor his attorneys were informed of the officer's second visit to, and allegedly illegal search of, his home on March 21. Thus, defendant concludes, he was not aware of the grounds for his motion prior to the officer's testimony at trial, see Crim.P. 41(e)(5), and that therefore the court erred in finding that the motion was not timely filed. This argument is not persuasive.
The initial search of defendant's home was conducted with a valid warrant, and the knowledge concerning the container acquired by the officers during that search was not impermissibly tainted under the doctrine of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). See People v. Orf, 172 Colo. 253, 472 P.2d 123 (1970). Actual seizure of the container was accomplished through Mrs. Hinchman's voluntary relinquishment of the item. And, in view of Mrs. Hinchman's proprietary interest in the premises, her agreement to surrender the evidence resulted in no infringement of defendant's constitutional rights. See United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Lanford v. People, 176 Colo. 109, 489 P.2d 210 (1971).
Accordingly, even if the officers' second visit were deemed illegal, that intrusion produced no evidence which was used against defendant and could not have provided grounds upon which to grant the motion for suppression. Under these circumstances, defendant possessed prior to trial all pertinent information relative to the seizure of the container and its possible suppression, and the trial court consequently did not abuse its discretion in declaring the motion untimely. See Morgan v. People, 166 Colo. 451, 444 P.2d 386 (1968); see also Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

II
Defendant next asserts that the trial court erred in limiting his cross-examination of the People's chief witness. We disagree.
The prosecution witness, who had been involved in a previous juvenile delinquency adjudication, testified that defendant had offered him $200 to burn the offices of one Russel Gummin. The witness recounted at length his conversations with defendant, the means by which he gained access to the building and started the fire, and his motives for testifying against defendant, which included a plea bargain in the instant case. He also admitted that he had burglarized the offices before burning them, that he had used drugs on the day of the incident, and that he fled the scene of the crime in an automobile which he had stolen several days previously.
With respect to the witness' past adjudication, the trial court ruled in camera that impeachment on this basis would be limited to establishing that the witness had been charged with previous offenses and that he had in that prosecution received certain favorable treatment in return for his testimony against the other defendants.
Relying on Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and People v. King, 179 Colo. 94, 498 P.2d 1142 (1972), defendant argues that he was entitled to impeach the witness by detailed examination concerning the earlier adjudication, including the nature of the offense, the date of the adjudication, and the precise terms of the plea bargain. Neither decision advanced by defendant mandates such a result.
Davis v. Alaska, supra, does not confer a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications, see concurring opinion of Stewart, J.; see also People v. Robles, 183 Colo. 4, 514 P.2d 630 (1973), but rather it requires only that an adequate inquiry into the bias and motivation of a witness be permitted. Here, in contrast to the circumstances present in Davis, defense counsel was permitted to explore fully the witness' motives for testifying, which examination satisfied the rights of confrontation enunciated in both Davis and in People v. King, supra.
*869 In connection with general impeachment designed to show a witness' lack of credibility through his prior crimes, broad latitude is to be afforded the cross-examiner. However, the scope and limits of such cross-examination are within the sound discretion of the trial court. People v. Crawford, Colo., 553 P.2d 827 (1976).
Here, the witness recited numerous violations of the law for which he had been neither charged nor convicted. He admitted his participation in the arson and also stated that he had been involved in a previous adjudication resulting in a plea bargain. Given that testimony, the trial court did not abuse its discretion in precluding an even more extensive inquiry into the witness' criminal background.

III
Without cross-appeal, the People here attempt to challenge the propriety of defendant's sentence, which was suspended in part by the trial court. We decline to consider the matter.
Generally, in the absence of a cross-appeal, an appellee may not raise on review alleged errors of the trial court. Newt Olson Lumber Co. v. School District No. 8, 83 Colo. 272, 263 P. 723 (1928). An exception to the rule is recognized when the appellee asserts arguments in support of his judgment which would not increase his rights under the judgment. City of Delta v. Thompson, Colo.App., 548 P.2d 1292 (1975). In the context of a criminal proceeding, principles of due process demand, at a minimum, that an attempt by the prosecution to enlarge an appellant's sentence conform to these established procedural requisites.
Appeals by the prosecution are permitted in this state pursuant to statute. Section 16-12-102, C.R.S.1973; see also Krutka v. Spinuzzi, 153 Colo. 115, 384 P.2d 928 (1963). But, § 16-12-102 must be interpreted consistently with applicable rules of procedure and judicial precedent indicative of the legislative intent underlying the statute. See People v. Stevens, 183 Colo. 399, 517 P.2d 1336 (1973).
The People argue that C.A.R. 4(c)(2)(I) and People v. Renfrow, Colo., 564 P.2d 411 (1977), establish the proposition that review of the propriety of a sentence is an adjunct of the appeal, even when the matter has not been raised. However, the situation here concerning an attempted enlargement of defendant's sentence is to be distinguished from the circumstances contemplated in the Rule, which is specifically limited to appeals by a defendant, and from the situation in Renfrow where a reduced sentence was ordered.
In addition, judicial standards of fairness reaching constitutional proportion do not permit procedures which effectively deter a defendant from exercising his rights to appeal. Here, given the People's failure to appraise the trial court of its alleged error and the lack of notice to defendant of the intended attack on his sentence, the observance of such standards becomes crucial.
The United States Supreme Court has on numerous occasions addressed the due process considerations arising from the possibility of a criminal defendant's receiving an increased sentence as a consequence of his appeal. In its most recent and definitive treatment of the question, the Court stated:
"The lesson that emerges from [past cases] is that the due process clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of `vindictiveness.'"
Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The decision further explains that the requisite "vindictiveness" is not necessarily evidenced by bad faith on the part of the prosecution, but can also be manifested through circumstances which indicate that the state is engaged in retaliation against the defendant.
While the precise facts of Blackledge are distinguishable from those presented in this case, the Court's rationale is not. See also ABA, Standards Relating to Criminal Appeals § 2.3(c)(iii). We therefore *870 conclude that neither C.A.R. 4(c) nor any other authority permits the attack on defendant's sentence attempted by the prosecution in this case. Rather, we hold that the People's failure to file a cross-appeal was fatal to any further challenge to the sentence, and, accordingly, we do not reach the merits of that issue.
The judgment is affirmed.
BERMAN, J., concurs.
KELLY, J., concurs in part and dissents in part.
KELLY, Judge, concurring in part, dissenting in part.
I respectfully dissent from that part of the majority opinion which declines consideration of the People's challenge of the propriety of the defendant's sentence for arson.
After his convictions for first degree arson and conspiracy, the defendant was sentenced to a term of not less than five nor more than six years on the arson charge and to an indeterminate to three-year term for conspiracy in accordance with § 18-1-105, C.R.S.1973. The trial court then unconditionally suspended three years from the maximum and minimum limits of the arson sentence.
On appeal, the Attorney General contends that the suspension effectively reduced the arson sentence to a term of from two to three years, in contravention of § 16-11-304, C.R.S.1973, and § 18-1-105, C.R.S.1973, which provide that the minimum penalty for class 3 felonies is five years. I agree. In my view, the trial court exceeded its jurisdiction in suspending a portion of the defendant's sentence without placing him on probation, cf. People v. Ray, Colo., 560 P.2d 74 (1977), thereby allowing him to serve a lesser term than that prescribed by the legislature.

I.
We are here confronted with constitutional limits on the judiciary in imposing sentence on a violator of the criminal law. Implicit in our tripartite system of government is the maxim that no branch of government may exercise the governmental powers reserved to another, just as one branch may not confer upon a second branch powers reserved to the third. People v. Herrera, 183 Colo. 155, 516 P.2d 626 (1973). Such an encroachment upon the powers of coordinate branches of government is constitutionally prohibited. Colo. Const., Art. III. Where the legislature has delineated maximum and minimum terms of confinement, the trial court may exercise its discretion in sentencing the defendant only within the statutory limits. People v. Pauldino, 187 Colo. 61, 528 P.2d 384 (1974); People v. Jenkins, 180 Colo. 35, 501 P.2d 742 (1972); People v. Jones, 176 Colo. 61, 489 P.2d 596 (1971).
The Supreme Court has often recognized the legislature's exclusive power to define crimes and to prescribe punishment. People v. Arellano, 185 Colo. 280, 524 P.2d 305 (1974); People v. Stark, 157 Colo. 59, 400 P.2d 923 (1965). The legislature's preeminence in this field precludes judicial interference with legislative sentence determinations. Walker v. People, 126 Colo. 135, 248 P.2d 287 (1952). Unless the punishment provided by the legislature can be regarded as cruel or unusual, the courts are obligated to defer to the General Assembly's judgment. Bland v. People, 32 Colo. 319, 76 P. 359 (1904).
Consequently, courts are bound by § 16-11-304, C.R.S.1973:
"(1) When a person has been convicted of a class 2 or class 3 felony, the court imposing the sentence . . . shall establish a maximum and a minimum term for which said convict may be imprisoned. The maximum term shall not be longer than the longest term fixed by law for the punishment of the offense of which he was convicted, and the minimum term shall not be less than the shortest term fixed by law for the punishment of the offense of which he was convicted." See also Crim.P. 32(b)(2)(II).
Accordingly, I regard the trial court's suspension of the defendant's sentence as an *871 unconstitutional invasion of the exclusive province of the legislative branch.[1]

II.
Based on the foregoing analysis, I must conclude that the majority has mistakenly determined that this issue can be reviewed only if the People raise it on cross-appeal. We are faced with a jurisdictional question, not merely a potential error of law, and jurisdictional defects may be raised at any point in the proceeding by any party or by the court sua sponte. Peaker v. Southeastern Colorado Water Conservancy District, 174 Colo. 210, 483 P.2d 232 (1971); Triebelhorn v. Turzanski, 149 Colo. 558, 370 P.2d 757 (1962); Julian v. People, 67 colo. 152, 186 P. 714 (1919). Since sentences imposed in excess of the court's authority are void, see Serra v. Cameron, 133 Colo. 115, 292 P.2d 340 (1956); People ex rel. Carroll v. District Court, 106 Colo. 89, 101 P.2d 26 (1940); In re Nottingham, 84 Colo. 123, 268 P. 587 (1928), the People have raised a jurisdictional question and no notice of cross-appeal was required. See C.A.R. 1(d); Crim.P. 12(b)(2).
While this question has not been explicitly addressed in Colorado, the history of several of our appellate decisions supports the conclusion that cross-appeal is not prerequisite to our consideration of questions of jurisdictional and constitutional magnitude. In People v. Herrera, supra, the defendant appealed the trial court's refusal to reconsider his sentence in light of lesser penalties prescribed by the then recently enacted Criminal Code. The People, at oral argument, suggested that retroactive application of the more lenient sentence schedule would conflict with the governor's exclusive right of commutation, in violation of the separation of powers provisions of Article III of the Colorado Constitution, with the result that the Supreme Court declared the statute in question unconstitutional.
A recent case, People v. Mankowsky, 187 Colo. 145, 529 P.2d 314 (1974), is substantially similar to the present case. There, after the defendant's conviction and sentence became final, he petitioned for a reduction of sentence in accordance with the reduced penalties of the Criminal Code. The trial court did reduce the defendant's sentence, but only slightly, and the defendant appealed the reduction on the ground that he was denied a fair hearing before the trial court. The Attorney General argued, without cross-appeal, that the case was controlled by People v. Herrera, supra, and the Supreme Court agreed:
"The Attorney-General points out that under Herrera, the reduction of sentence was a nullity and we agree. Since the Court had no jurisdiction to enter the order it did, the modifying sentence must be set aside, and the cause remanded for the reinstatement of the earlier sentence in a proceeding at which the defendant is present." People v. Mankowsky, supra.

The People in this case seek no more than was ordered in Mankowsky. I see no obstacle to granting the relief requested, especially when the failure to do so results in judicial usurpation of legislative and executive authority.
Here, the initial sentence is not invalidated by the void attempt at suspension. In re Nottingham, supra. I would vacate the trial court's order of suspension and would remand the case for the issuance of a mittimus in accordance with the trial court's valid sentence on the arson charge, Serra v. Cameron, supra; People ex rel. Carroll v. *872 District Court, supra; People v. Patrick, Colo.App., 555 P.2d 182 (1976). However, the Attorney General's argument that the conspiracy sentence is also invalid overlooks the applicable amendment of the relevant statutes, see §§ 18-1-105 and 18-2-206, C.R.S.1973 (1976 Cum.Supp.), and that sentence should therefore be affirmed.
NOTES
[1] An additional violation of the doctrine of separation of powers arises under the provisions of Article IV, Section 7 of the Colorado Constitution, which reserves to the governor exclusive authority to grant reprieves, commutations, and pardons to convicted violators of the law. People v. Herrera, supra. Where, as here, a trial court, in effect, sentences a defendant to a punishment lighter than that established by the legislature, it has invaded the provinces of each of the other branches of government. Such mitigation of sentence not only usurps the legislative prerogative of defining punishments, but also invades the executive's privilege of commuting sentences of convicted offenders. Colo.Const., Art. IV, Sec. 7; People v. Herrera, supra; see also People v. Simms, 186 Colo. 447, 528 P.2d 228 (1974); People v. Davis, 186 Colo. 186, 526 P.2d 312 (1974); People v. Fulmer, 185 Colo. 366, 524 P.2d 606 (1974); People v. Johnson, 185 Colo. 285, 523 P.2d 1403 (1974).