**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Kim L. HASTINGS, Defendant–Appellant.**

No. 97CA0017.

Colorado Court of Appeals, Div. I.

Dec. 10, 1998.

Rehearing Denied Jan. 21, 1999.

Certiorari Granted Aug. 23, 1999.

General, Denver, Colorado, for Plaintiff–Appellee

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by Judge PLANK

Defendant, Kim L. Hastings, appeals from a judgment of conviction on jury verdicts finding her guilty of contributing to the delinquency of a minor and distribution of a controlled substance. We affirm.

The charges at issue were premised on allegations that defendant gave several diazepam pills to a thirteen-year-old girl who was a visitor at defendant's apartment. Defendant testified that the victim had misidentified herself as her eighteen-year-old sister and that she had given the victim only some generic ibuprofen tablets at the victim's request. However, the victim testified that she had received several pills from defendant of differing descriptions. During the police investigation, defendant confessed to giving the victim two diazepam tablets but thereafter recanted the confession, asserting that it was obtained by coercion.

I.

Defendant first contends that her conviction for contributing to the delinquency of a minor should be reversed because the jury was improperly instructed on the prosecution's burden of proof on a material element of the offense. We disagree.

Contributing to the delinquency of a minor is defined in §18–6–701(1), C.R.S.1998:

Any person who induces, aids, or encourages a child to violate any federal or state law, municipal or county ordinance, or court order commits contributing to the delinquency of a minor. For the purposes of this section, the term 'child' means any person under the age of eighteen years.

Because the statute does not expressly state the *mens rea* required for the offense of contributing to the delinquency of a minor, the appropriate culpable mental state is "knowingly." *See People v. Moore,* 674 P.2d 354 (Colo.1984) (mental state of "knowingly"

generally applies when statute silent); *People v. Trevino,* 826 P.2d 399 (Colo.App.1991) (specifically approving mental state of "knowingly" for offense of contributing to the delinquency of a minor).

When a mental state is specified in a statute, or imputed under *People v. Moore, supra,* that mental state applies to all the elements of the offense unless a contrary intent clearly appears in the statute. Section 18–1–503(4), C.R.S.1998; *People v. Trevino, supra.*

However, when an element of a crime is that the victim be under the age of eighteen years, under §18–3–406(1), C.R.S.1998, there exists an affirmative defense if the defendant reasonably believes the victim to be over the requisite age provided that the victim is at least fifteen years old. But, when an element of a crime is that the victim be under the age of fifteen years, there is no defense available based on the defendant's knowledge or belief as to the age of the victim. Thus, such crimes are strict liability offenses as to that element. *See* §18–3–406(2), C.R.S.1998; *People v. Salazar,* 920 P.2d 893 (Colo.App. 1996).

The affirmative defense statute is, however, silent as to the requisite mental state required when, as here, a statute proscribes conduct directed at a child under the age of eighteen where the victim is, in fact, under the age of fifteen.

A division of this court previously determined that the mental state "knowingly" applies to the age of the victim in a prosecution for contributing to the delinquency of a minor, but the effect of the affirmative defense in §18–3–406(1) was not addressed by the parties in that case, and the division expressly declined to consider it. *People v. Trevino, supra.*

A different division of this court stated, in construing the statute proscribing sexual exploitation of a child, that the affirmative defense in §18–3–406(1) "manifests a clear legislative intent that the culpable mental state of 'knowingly' does not apply to the age of the victim," at least when the victim's age is between fifteen and eighteen years. *People v. Bath,* 890 P.2d 269, 271 (Colo.App.1994).

We read §18–3–406 as expressing the General Assembly's clear intention to provide a defendant with an affirmative defense if he or she reasonably believes a victim to be eighteen years of age or older, but to deny *any* defense based on a belief about the age of a victim when the criminal conduct is directed at a child under the age of fifteen. It would be incongruous to hold that the General Assembly intended to require the prosecution, for crimes in which "the criminality of conduct depends on a child's being below the age of eighteen," to meet only the lesser burden of disproving the defendant's reasonable belief as to the victim's age when the victim is fifteen or older, but the higher burden of affirmatively proving the defendant's knowledge of the victim's age for a younger victim.

Furthermore, to the extent that the language of §18–3–406 is ambiguous regarding the General Assembly's intent under the circumstances presented here, we choose to construe it in favor of protecting the child victim rather than the adult perpetrator.

The General Assembly has the authority to create and limit the application of affirmative defenses. *Rowe v. People*, 856 P.2d 486 (Colo.1993). It also plainly has the authority to create crimes and elements of strict liability, especially where necessary to protect children from the acts and decisions of adults. *See Hershorn v. People*, 108 Colo. 43, 113 P.2d 680 (1941) (lack of knowledge of child's age no defense for selling liquor to an intoxicated minor); *People v. Salazar*, 920 P.2d 893 (Colo.App.1996) (the purpose underlying crime of statutory rape is to protect children from the consequences of acts they cannot comprehend; accordingly, §18–3–406(2), C.R.S.1998, makes sexual assault on a child a crime of strict liability as to the element of the victim's age); *see also People v. Atchison*, 22 Cal.3d 181, 583 P.2d 735, 148 Cal. Rptr. 881 (1978) (Clark, J., concurring and dissenting) (mistake of age should not be a defense to a charge of contributing to the delinquency of a minor predicated on the furnishing of a controlled substance); *Complaint Concerning Winton*, 350 N.W.2d 337 (Minn.1984) (mistake of age is no defense to a charge of contributing to the delinquency

of a minor); *Pennsylvania v. Robinson*, 497 Pa. 49, 54, 438 A.2d 964, 966 (1981) (statutory rape is a crime of strict liability as to the age of the victim, and by establishing it as such the legislature has expressed an intention to "protect those who are too unsophisticated to protect themselves"). Similarly, this court has held that the offense of assault on the elderly is a crime of strict liability as to the defendant's knowledge of the victim's age. *People v. Suazo*, 867 P.2d 161 (Colo.App. 1993).

Here, the jury was instructed, in pertinent part, that, to find defendant guilty of contributing to the delinquency of a minor, it must find that she had:

3. knowingly,

4. induced, aided, or encouraged,

5. a person under the age of 18, [the victim],

6. to violate state law, to wit: Unlawful Use of a Controlled Substance....

During its deliberations, the jury requested clarification of whether "knowingly" applied to the element of the victim's age, and in particular whether the prosecution must prove that defendant knew the victim to be under the age of eighteen. The trial court, over defendant's objection, gave the following supplemental instruction to the jury:

[T]he mental culpability of 'knowingly' as defined previously in the instructions applies only to the element of inducing, aiding, or encouraging a violation of state law under the elements of contributing to the delinquency of a minor. It does not apply to element 5 requiring the other person to be under the age of eighteen. The Court again instructs you that the prosecution bears the burden of proving beyond a reasonable doubt all of the elements set out in the instructions concerning contributing to the delinquency of a minor.

In light of our holding above, this supplemental jury instruction was a correct statement of the law and did not relieve the prosecution of the burden of proving a material element of the charged offense beyond a reasonable doubt. There was no error.

## II.

Defendant next contends that her conviction for distribution of a controlled substance must be reversed because there was insufficient evidence to support it. We disagree.

When a defendant asserts that the evidence was insufficient to support a conviction, we review the evidence presented, in the light most favorable to the prosecution, to ascertain whether a reasonable juror could conclude that the prosecution proved all elements of the charged offense beyond a reasonable doubt. We may not substitute our judgment for that of the jury and reweigh the evidence or the credibility of witnesses, and we may not disregard the testimony of a witness unless it is utterly unbelievable. However, more than a modicum of evidence is required to prove an element beyond a reasonable doubt. *Kogan v. People*, 756 P.2d 945 (Colo.1988). The jury may not speculate, guess, or indulge in conjecture to reach its guilty verdict. *People v. Gonzales*, 666 P.2d 123 (Colo.1983).

Here, taking the evidence in the light most favorable to the prosecution, we conclude that the evidence presented at trial adequately supports a finding, beyond a reasonable doubt, that defendant knowingly distributed the controlled substance diazepam to the victim as charged.

In pertinent part, the jury was instructed that, to find defendant guilty of distributing a controlled substance, it must find that the prosecution had proved beyond a reasonable doubt that defendant had:

3. knowingly,

4. distributed, with or without remuneration,

5. the schedule IV controlled substance, [d]iazepam.

The prosecution presented evidence that the victim had symptoms consistent with diazepam ingestion within the relevant period of time and that as many as five of defendant's diazepam tablets were unaccounted for. There was some inconsistency between the victim's testimony describing the appearance of the pills she was given and the color, shape, and form of the diazepam pills in defendant's possession. However, there was also testimony from which the jury could reasonably have inferred that the victim did not accurately see or recall the appearance of the pills. Moreover, defendant confessed to the police that she had given the victim some diazepam, and the facts and circumstances of the confession were corroborated by more than a modicum of testimony.

This evidence was sufficient to support the jury's verdict.

## III.

Defendant next contends that it was error for the trial court to deny her motion, made during the trial, to suppress evidence obtained by an illegal search of her home. We conclude that the motion was properly denied as being untimely filed.

After taking the pills, the victim stayed the night in defendant's apartment. Two police detectives, searching for the victim on an unrelated matter, came to defendant's apartment the next day because they believed the victim might be there. One detective knocked at the front door while the other waited by the back of the apartment to prevent the victim from fleeing. When there was no answer to the knocking, the detective at the back pushed up the blinds on an open rear window, saw the victim, and asked her to have someone open the front door. The victim attempted to flee out the front door but was apprehended.

Defendant contends that the detective's conduct amounted to an illegal search of her apartment, and moved to suppress evidence seized during a later search supported by a warrant as the fruits of the earlier illegal search. The trial court ruled that defendant lacked standing to raise the illegal search issue and that the motion was untimely filed.

First, we note that defendant, as the undisputed tenant of the apartment where the detective contacted the victim, plainly has an objectively reasonable expectation of privacy in her own home, and she therefore did not lack standing to assert her constitutional right to be free from illegal searches and seizures. *See People v. Schafer*, 946 P.2d 938 (Colo.1997).

■ As to the timeliness issue, a motion to suppress should, whenever possible, be brought prior to trial to reduce trial inefficiency. When a motion to suppress evidence is made during trial, the trial court may deny it as untimely if the grounds for the motion were known to the defendant, or reasonably discernible through due diligence, before trial. *People v. Tyler*, 874 P.2d 1037 (Colo. 1994).

■ Here, defense counsel asserted to the trial court that the victim could not be located prior to trial and that her testimony about the detective pushing up the blinds and putting his head through the window was therefore unexpected. Consequently, defendant contends that the motion to suppress was made at the earliest possible moment, when she first became aware of the police conduct as a result of the victim's trial testimony.

However, defendant testified on her own behalf and stated that, on the morning in question, she was awakened by her son claiming that "a detective just tried to come through my window." Defendant and her son were therefore aware that the detective had been at the window and might have attempted to enter through it. Thus, she was on notice of the police conduct nearly from the moment it occurred.

Under these circumstances, we conclude that the trial court did not err in ruling that the motion was untimely.

## IV.

Defendant next contends that the prosecutor's remarks during closing argument, referring to her apartment as a "flophouse" and inviting speculation as to her motives for giving drugs to a teenage girl, were improper and undermined the fairness of the trial. We perceive no basis for reversal.

### A.

During closing argument, the prosecutor made two statements referring to defendant's apartment as a "flophouse." Defendant objected to the second remark, and the trial court sustained the objection. Later, the trial court denied a motion for a new trial based on the earlier objection.

■ The trial court has broad discretion in ruling on objections made during closing argument, and absent a gross abuse of that discretion, we will not reverse the trial court's rulings. *People v. Moody*, 676 P.2d 691 (Colo.1984). To be a gross abuse of its discretion, the trial court's ruling must have resulted in a miscarriage of justice. *Harris v. People*, 888 P.2d 259 (Colo.1995).

During closing argument, the prosecutor is entitled to employ rhetorical devices and to engage in oratorical embellishment and metaphorical nuance, so long as he or she does not thereby induce the jury to determine guilt on the basis of prejudice or passion, or attempt to inject irrelevant issues or evidence into the case, or to accomplish some other improper purpose. *Harris v. People, supra.* A prosecutor, "while free to strike hard blows, is not at liberty to strike foul ones." *Wilson v. People*, 743 P.2d 415, 418 (Colo.1987).

Here, the prosecutor stated during closing argument:

> I don't mean to be demeaning when I say this, but the term for a house such as all this, when we have all these teenagers congregating runaways, is a flop house.

During the prosecutor's rebuttal closing argument, he stated:

> [The detectives] were looking for [the victim] because she was a runaway. And I'm not going to deny that she's a troubled killed [sic]. There's no such thing as a runaway that's not a troubled kid. But that's exactly why we don't want adults harboring them in their flophouses.

■ In light of the testimony that groups of various teenagers were common visitors at defendant's home at all hours, and that the victim was casually permitted to stay overnight, the prosecutor's comments constitute oratorical embellishment for the proper purpose of emphasizing the conditions in defendant's home. It was therefore not error for the trial court to deny defendant's motion for a new trial on this basis.

### B.

Defendant further contends, however, that additional remarks by the prosecutor during

closing argument constituted "unsupported innuendo" to supply the jury with a speculative and depraved motive for defendant giving the victim diazepam.

The prosecutor stated during closing argument:

> She has these [d]iazepam. She's got this girl. She wants this girl to stay over. She wants this girl to be with her for whatever reason. She wants this girl to like her, this teenage girl. And that's why she gives her this [d]iazepam.

 Because defendant did not object to these remarks during the trial, we review the trial court's ruling only for plain error. An error amounts to plain error only if it casts serious doubt upon the basic fairness of the proceeding. *Wilson v. People, supra.*

Our review of the record reveals nothing to support an inference that defendant gave diazepam to the victim to induce her to stay or to influence her affections, and the prosecutor's comments were therefore beyond the scope of the evidence presented to the jury and reasonable inferences to be drawn from that evidence. These comments were therefore improper and we do not condone them. *See Harris v. People, supra.*

However, the record reveals that this was an isolated remark of no great significance in the prosecutor's closing argument. As such, we are not persuaded that this comment, standing alone or together with the circumstances of the trial as a whole, casts serious doubt on the fairness of the trial that would warrant reversal under the plain error standard. *See Wilson v. People, supra.*

The judgment is affirmed.

Judge METZGER and Judge ROTHENBERG concur.