22CA1730 Peo v Torres 10-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1730
City and County of Denver District Court No. 21CR3373
Honorable Jay S. Grant, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew Torres,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre, J., concurs
Yun, J., concurs in part and dissents in part

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

Philip J. Weiser, Attorney General, Alejandro Sorg Gonzalez, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julieanne Farchione, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Matthew Torres, appeals his conviction of two counts of possession of a weapon by a previous offender (POWPO). We agree with him that his convictions must merge but conclude that he is not entitled to any additional relief.

I.     Background

¶ 2     Police were surveilling an RV they believed was involved in illegal drug sales. Torres and his friend walked past the RV and then returned to talk to the RV's occupant through the driver's side window. Torres and his friend appeared to argue with the person inside the RV when Torres' friend reached through the open window and appeared to attack the person inside. Torres and his friend then walked away from the RV with Torres appearing to try to calm his friend down.

¶ 3     Having observed these events, police decided to approach Torres and his friend. Officer Hillers detained Torres while Officer Hart detained his friend. A third officer detained the person in the RV. During this interaction, officers discovered a gun on Torres' hip.

¶ 4     Torres was charged with two counts of POWPO based on two previous felony convictions. Before trial, he moved to suppress the

1

gun, arguing that police lacked reasonable suspicion to support either an investigatory stop or a pat-down for weapons. The trial court denied the motion and admitted the gun evidence at trial. The jury found Torres guilty of both POWPO counts, and he was convicted and sentenced accordingly.

¶ 5 Torres appeals. He argues that the trial court erred by (1) failing to suppress the gun; (2) denying a challenge for cause to a juror who served on the jury; (3) refusing to compel the prosecution to discover certain documents; and (4) failing to merge the two POWPO convictions. We conclude that only the last argument warrants relief.

## II. Suppression

¶ 6 Torres argues that the trial court erred by (1) denying his motion to suppress at the pretrial suppression hearing and (2) refusing to reverse that ruling at trial based on new evidence. We disagree with both arguments.

## A. Governing Law

¶ 7 We review a trial court's suppression ruling as a mixed question of fact and law. *People v. Deaner*, 2022 CO 43, ¶ 10. We defer to the court's factual findings if they are supported by

competent evidence in the record and review the legal effect of those facts de novo. *Id.*

¶ 8    Under the Fourth Amendment, an investigatory stop like the one at issue here must be supported by a reasonable articulable suspicion that the suspect is involved in criminal activity (reasonable suspicion). *People v. Dacus*, 2024 CO 51, ¶ 26.

¶ 9    A legal investigatory stop does not, in and of itself, justify a pat-down search for weapons. *People v. Martinez*, 801 P.2d 542, 544-45 (Colo. 1990). Instead, even during a legal investigatory stop, officers may conduct a pat-down search for weapons only if there is also reasonable suspicion that the suspect is armed and dangerous. *Id.* at 545.

¶ 10    It is initially the defendant's burden to establish the point at which a Fourth Amendment seizure occurred. *See Outlaw v. People*, 17 P.3d 150, 155 (Colo. 2001). If the defendant establishes a Fourth Amendment seizure and the police acted without a warrant, as they did here, the burden shifts to the prosecution to prove that it was legal. *Id.*

## B. Pretrial Ruling

¶ 11 In reviewing a pretrial suppression ruling, we consider only the record created at the suppression hearing. *Dacus*, ¶ 24. Torres argues that, based on the suppression hearing evidence, police had neither reasonable suspicion for an investigatory stop nor reasonable suspicion to believe that he was armed and dangerous when the gun was discovered.

¶ 12 We conclude these arguments are effectively irrelevant. Based on our review of the suppression hearing evidence, we conclude that Torres failed to establish that he was seized at the moment police discovered the gun.

¶ 13 A Fourth Amendment seizure requires either (1) the application of physical force to restrain movement or (2) in the absence of physical force, a suspect's submission to an officer's show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). If there is no application of physical force and a suspect refuses to submit to an officer's show of authority, there is no seizure. This is what the evidence at the suppression hearing showed.

4

¶ 14 Officer Hillers, Torres' arresting officer, did not testify at the suppression hearing because he had COVID-19. But Officer Hart, who detained Torres' friend, did testify. He testified that Officer Hillers approached Torres, saying he wanted to speak with Torres and pat him down for weapons. But Torres said no. Officer Hart further testified that he saw the holstered gun under Torres' shirt before Officer Hillers made physical contact with Torres and before Torres acquiesced to Officer Hillers' show of authority. In other words, Officer Hart saw the gun before Torres was seized and certainly before any search occurred.

¶ 15 No contrary evidence was presented at the suppression hearing. We therefore must reject Torres' argument that the trial court should have granted his suppression motion at the suppression hearing. Because the evidence at the hearing showed that police discovered the gun before any stop or search took place, whether reasonable suspicion existed for either was irrelevant.

### C. Renewed Motion at Trial

¶ 16 Torres also argues that the trial court should have revisited its suppression ruling at trial when Officer Hillers testified for the first

time because his testimony suggested Torres *was* seized at the moment the officers discovered the gun.

¶ 17     Officer Hillers testified at trial that he had already applied physical force to Torres when Officer Hart discovered the gun. He testified that he heard Officer Hart say "gun" — indicating that Torres had a gun — *after* he (Officer Hillers) had grabbed Torres' arm. Torres argued to the trial court that this testimony suggested he was seized before the officers discovered the gun, thereby contradicting the suppression hearing evidence and undermining the court's pretrial suppression ruling. The court declined to revisit its pretrial suppression ruling, saying that ruling was the law of the case and observing that "[t]he Defense could have called Officer Hillers [at the suppression hearing] to provide a second perspective."

¶ 18     Generally, motions to suppress must be filed and ruled upon before trial. Crim. P. 41(e). But a trial court retains discretion to entertain a motion to suppress at trial. *Id.* A trial court acts within its discretion by denying a during-trial suppression motion "if the grounds therefor were known or by due diligence were reasonably

6

discernible prior to trial." *People v. Tyler*, 874 P.2d 1037, 1039 (Colo. 1994).

¶ 19 Torres' renewal of his suppression motion based on Officer Hillers' testimony was effectively a late suppression motion that the trial court had the discretion to consider under Crim. P. 41(e). We conclude that the court acted within its discretion by denying it because its grounds (Officer Hillers' testimony) were reasonably discernible prior to trial through due diligence.

¶ 20 We recognize that it was not defense counsel's fault that Officer Hillers could not testify at the suppression hearing (he had COVID-19). We also recognize that defense counsel likely did not know how Officer Hillers would describe the events at issue. But Officer Hillers was the arresting officer, and, before trial, it was clear that the fate of any suppression motion would turn on what Officers Hillers and Hart knew at the moment one of them first saw the gun. Under these circumstances, due diligence required defense counsel to present Officer Hillers' testimony before the court ruled on the suppression motion.

¶ 21 Upon learning that Officer Hillers was sick and unavailable for the suppression hearing, defense counsel could have asked for a

continuance or proceeded with the suppression hearing and requested an additional hearing date before trial at which Officer Hillers could testify. Had defense counsel done so, the conflict between the two officers' testimony would have been obvious and allowed the trial court to rule on the suppression issue before trial. Put in the language of the governing legal standard, had defense counsel exercised due diligence, the grounds for the suppression motion would have been reasonably discernible. We therefore conclude that the trial court did not abuse its discretion by denying the during-trial suppression motion.

¶ 22    This result may seem troubling and unfair given that Officer Hillers' testimony, the substance of which was revealed only at trial, could have benefitted Torres' suppression argument. But avoiding this situation is why Crim. P. 41(e) "require[es] the parties to . . . pursue discovery vigorously prior to trial." *Tyler*, 874 P.2d at 1039. And our holding is not without precedent. *See People v. Hastings*, 983 P.2d 78, 82-83 (Colo. App. 1998) (holding that during-trial suppression motion was untimely even though primary witness of alleged illegal search was unavailable before trial because defendant

8

knew that the potentially illegal search had occurred), *aff'd on other grounds sub nom., Gorman v. People*, 19 P.3d 662 (Colo. 2000).

¶ 23    We therefore disagree with Torres' arguments that the trial court erred by failing to suppress the gun evidence.

### III.   Challenge for Cause

¶ 24    Torres next argues that the trial court erred by denying his challenge for cause to a juror who ended up serving on the jury. We review a court's denial of a challenge for cause to a juror for an abuse of discretion. *Marko v. People*, 2018 CO 97, ¶ 22. We perceive none here.

¶ 25    A juror's initial expression of bias does not necessarily require their exclusion for cause. *Id.* at ¶ 21. Even if a juror initially expresses bias or a misunderstanding of the law, the juror should not be excused for cause if the court believes they can set that bias aside and impartially follow the law. *See* § 16-10-103(1)(j), C.R.S. 2025; *Marko*, ¶ 21.

¶ 26    Here, the juror initially indicated that evidence of Torres' prior felony convictions would make her think it was more likely he committed the charged offenses. Defense counsel asked the juror a

series of questions about this belief that ultimately demonstrated

the juror could follow the law:

> Defense counsel: So if you were read a rule that said that a person who comes into this courtroom and sits at the defense table is presumed innocent, and that a prior felony conviction can not be held against them for the purposes of determining if they are guilty in this case, how do you fall on that rule?
>
> Juror: I am a rule follower, so I would follow the rule.  But it is in the back of my head.
>
> Defense counsel: We don't expect you to forget the things you believe or change who you are to come into this courtroom to be a juror. When you say that you would follow the rule, are you 100 percent confident you can follow that rule in every case, or is it something you would try to do?
>
> Juror: Try to do.
>
> Defense counsel: Okay.  I want to dig in a little bit on the word "try."
>
> So I try to wake up early and work out every day.  I don't work out every day.  That does not happen, but I try.  I set the alarm.
>
> When I say that I try to wake up and work out every morning, is that the same kind of try that you would apply in this case?
>
> Juror: I think I would follow the rule.  Having heard the "prior," it just — I will follow the rule, but — I don't know how to describe what

10

kind of "try" that would be.  It's just in the back of my head.

¶ 27     Based on this record, we conclude that the trial court acted within its discretion by denying the challenge for cause.  The juror repeatedly stated that she would follow the rule despite her initial belief about prior felony convictions.  We therefore disagree with Torres' argument that the trial court erred.

## IV.     Motion to Compel

¶ 28     Torres next argues that the trial court erred by refusing to compel the prosecution to discover a particular piece of evidence relevant to his prior felonies as a discovery sanction.  Torres claims that this error violated his constitutional right to due process and therefore argues that we must reverse unless the error was harmless beyond a reasonable doubt.  *See Hagos v. People*, 2012 CO 63, ¶ 11.  Even if we assume the trial court erred, and further assume that the error was constitutional, we conclude that it was harmless beyond a reasonable doubt because there is no reasonable possibility that it contributed to Torres' conviction.  *See id.*

11

¶ 29    About six months before trial, the prosecution sent the defense a photocopy of a packet of information, certified by another trial court, that contained records of Torres' prior felony convictions. But that's not all it contained.  The other trial court mistakenly included in the certified packet records from an unrelated case against an unrelated defendant.

¶ 30    Six months later, and less than a week before trial, the prosecution sent the defense a second version of the packet, again certified by the other trial court.  This second packet contained the same records of Torres' prior felonies, included additional records of Torres' prior felonies, and omitted the records from the unrelated case.  Because of a long holiday weekend right before trial, defense counsel did not become aware of the second packet until the prosecution sought to introduce it midway through trial.  Defense counsel objected to its admission, and the trial court overruled the objection and admitted it.

¶ 31    Defense counsel then sought to compel the prosecution to discover the original version of the first packet (not the photocopy sent six months before trial) so that defense counsel could introduce it to attack the reliability of the information in the second

packet.[1]  Defense counsel argued that this was an appropriate discovery sanction for the prosecution providing the second packet less than a week before trial.

¶ 32     Torres does not dispute that the second packet (the one admitted at trial) contained overwhelming evidence of his prior felonies.  The first packet did too — it contained court records showing that a person with Torres' identical name and date of birth had been convicted of two felonies.  Nevertheless, Torres claims there is a reasonable possibility that had he been able to introduce the first packet with its extraneous records, the jury would have doubted the reliability of *all* the records to the point that it would have found the records insufficient to prove Torres' prior felonies beyond a reasonable doubt.

¶ 33     We disagree.  Initially, we note that no ruling prevented Torres from introducing the photocopy of the first packet he already had in

---

[1] Defense counsel sought the original version of the first packet so that it could be introduced as a self-authenticating document.

his possession.[2]  Although the photocopy may not have been self-authenticating, Torres chose to forego laying foundation that could have allowed him to introduce the photocopy.

¶ 34     Furthermore, had the first packet been introduced, the jury would have certainly understood that the other trial court mistakenly certified the extraneous records.  But the jury would have also understood that the other trial court certified the same records of Torres' felonies twice, thereby bolstering the credibility of those records and strengthening the prosecution's case that he had been convicted of two prior felonies.  We therefore see no reasonable possibility that introducing the second packet without the first contributed to Torres' conviction.

¶ 35     Torres also argues that he was prejudiced by not being able to introduce the first packet with the extraneous records because it

---

[2] We recognize that in denying defense counsel's objection to admitting the second packet, the trial court said that the first packet "would cause incredible confusion to the jury."  We doubt that this constituted a ruling that any version of the first packet (original or photocopy) was inadmissible under CRE 403 for confusing the issues.  But if it was a ruling excluding the first packet under CRE 403, Torres does not challenge that ruling.  And that ruling would have rendered the original first packet inadmissible, thereby mooting the trial court's alleged in error in refusing to compel its discovery.

destroyed the defense's credibility with the jury. According to Torres, defense counsel made a promise to the jury in her opening statement that she was unable to fulfill because the first packet was never introduced. We presume that Torres is referring to this passage from defense counsel's opening statement:

> Finally, the People are going to talk about a prior case. They've already talked about a prior case where they allege that Mr. Torres was convicted of some crimes. We're going to ask you to question the evidence that they show you about that prior case. We're going to ask you to consider whether that evidence is reliable, whether that evidence is reliable enough to convict Mr. Torres and to find him guilty beyond a reasonable doubt. We're going to ask you to look very closely at that evidence and consider whether you should believe that that is true.

¶ 36    As this record shows, defense counsel made no promise during opening statement. She merely asked the jury to scrutinize the reliability of the prosecution's evidence. Consequently, we conclude that the exclusion of the first packet had no impact on the

defense's credibility with the jury and did not prejudice the defense as Torres suggests.[3]

## V.    Merger

¶ 37    Finally, Torres contends that his possession of a single gun during a single incident cannot support two POWPO convictions. The prosecution agrees, and so do we.  *See People v. Perez*, 2019 COA 48, ¶ 28 ("A person with multiple prior felony convictions may not be convicted of multiple POWPO counts for possession of a single gun during a single incident."), *affirmed on other grounds and vacated in part on other grounds*, 2021 CO 5M.  We therefore vacate one of Torres' POWPO convictions.

## VI.    Disposition

¶ 38    One of Torres' POWPO convictions is vacated.  The judgment is otherwise affirmed.  The case is remanded to the trial court with directions to correct the mittimus.

JUDGE FREYRE concurs.

---

[3] In so holding, we do not suggest that it was Torres' burden to establish prejudice for this assumed constitutional error.  It is the prosecution's burden to establish harmlessness beyond a reasonable doubt, *Hagos v. People*, 2012 CO 63, ¶ 11, a burden we conclude the prosecution has carried.

JUDGE YUN concurs in part and dissents in part.

JUDGE YUN, concurring in part and dissenting in part.

¶ 39    I concur with most of the majority's opinion.  But I part ways with the majority's conclusion that the trial court did not abuse its discretion by declining to reconsider its suppression ruling after Officer Hillers testified at trial.  Because Officer Hillers was absent from the suppression hearing due to illness from COVID-19 and his trial testimony directly contradicted, in part, the factual basis for the trial court's suppression decision, I believe the trial court abused its discretion by refusing to reconsider its earlier ruling.  Accordingly, I respectfully concur in part and dissent in part and would remand the case for the trial court to reconsider its suppression ruling in light of Officer Hillers's trial testimony.

¶ 40    Matthew Torres was charged with two counts of possession of a weapon by a previous offender.  Before trial, he moved to suppress evidence of the gun, contending that the police lacked reasonable suspicion to justify either an investigatory stop or a pat-down for weapons under the Fourth Amendment.

¶ 41    At the suppression hearing, Officer Hart testified that Officer Hillers approached Torres and stated that he wanted to pat Torres down for weapons and speak with him.  Torres responded, "No, you

18

can't pat me down, you can't search me, you have no right to search me." As Officer Hillers reached to control Torres, Officer Hart observed Torres pulling away and noticed a gun in a holster on Torres's hip. Officer Hart testified that he saw the gun before Officer Hillers made any physical contact with Torres and before Torres submitted to Officer Hillers's authority. Upon seeing the gun, Officer Hart assisted Officer Hillers in handcuffing and arresting Torres.

¶ 42    Based largely on Officer Hart's testimony, the trial court made the following findings:

> And I think here, based on the totality and universal knowledge — knowledge that the officer and detectives had, they had reason to go up and to question the individuals in the alley. And before even Mr. Torres was detained is when Detective Hart saw the gun. And regardless of whether he can legally carry a gun on your person, concealed, or whatever, for officer safety purposes he had reason to detain and secure the handgun in the alley.
>
> . . . .
>
> For those reasons, I find that I deny the Defense motion to suppress the evidence, and there's reasonable suspicion to approach the individuals and do a *Terry* pat-down for officer safety. Again, Mr. Torres turned away when Detective Hart saw the gun, then I think they

had reason to be able to detain him and secure him. So with that being said, we need to set a trial.

¶ 43    At trial, Officer Hillers testified that he informed Torres he intended to pat him down. Torres responded defiantly and began to walk away. As Torres attempted to leave, Officer Hillers grabbed his wrist, then reached for his belt and suspender area to prevent him from escaping. "[W]hen I grabbed onto the suspender . . . and belt area," Officer Hillers continued, "apparently that moved [Torres's shirt] or showed [Torres's] waistband, which [Officer] Hart could see," and "[t]hat was when [Officer Hart] . . . said 'gun.'" He further clarified:

> Q. Okay. And so you contacted Mr. Torres physically before you knew that there was a gun —or that there was likely a gun?
>
> A. Yes.
>
> Q. And it was after that that you heard Sergeant Hart announce "gun"?
>
> A. Correct.

¶ 44    Torres's counsel moved the trial court to reconsider its suppression ruling, arguing that Officer Hillers's testimony contradicted Officer Hart's suppression hearing testimony, which

20

formed the basis for the court's decision.  The trial court denied the

motion, reasoning as follows:

> So I guess my position is that there was a motions hearing where officers were called, officers testified, and I made a ruling on the evidence that was presented.  I think it's the law of the case.  I don't think I'm going to reopen it.

> The Defense could have called Officer Hillers to provide a second perspective.  Both officers have a different perspective on, like, what I think [the prosecutor] is saying that, you know, one is very close and one is not.

> I don't think it warrants, from what I — from my ruling and from what this detective has testified, I don't think that warrants a relitigation of the motion nor a change of my order.

¶ 45    In criminal cases, motions to suppress evidence should be

filed and resolved before trial when the defendant is aware of the

grounds for such a motion.  Crim. P. 41(e), (g); *People v. Tyler*,

874 P.2d 1037, 1039 (Colo. 1994).  This process promotes efficiency

by encouraging parties to conduct thorough discovery prior to trial.

*Tyler*, 874 P.2d at 1039.  It also allows both the prosecution and the

defense to prepare for trial with a clearer understanding of what

evidence will be admitted or excluded.  *Id.*

21

¶ 46    However, under Crim. P. 41(e), a trial court retains discretion to consider a motion to suppress during trial. The court may deny such a motion at trial "if the grounds therefor were known or by due diligence were reasonably discernible prior to trial." *Tyler*, 874 P.2d at 1039. However, "if the defendant could not by the exercise of reasonable diligence discover the grounds for such a motion in advance of trial, the defendant should not be deemed to have forfeited his or her right to seek suppression of evidence arguably obtained by constitutionally prohibited means." *Id.* Otherwise, a contrary ruling would result in a postconviction claim of ineffective assistance of counsel if the defendant is convicted. *Id.* Further, when the justification for late filing is a close call, the court may exercise its discretion to rule on the merits of an arguably untimely motion as a precaution, recognizing that a future reversal of its timeliness determination would likely necessitate a new trial. *Id.* at 1039-40.

¶ 47    In my view, the trial court abused its discretion by refusing to reconsider its suppression ruling based on Officer Hillers's trial testimony for several reasons.

¶ 48    First, the law of the case doctrine permits a court to reconsider its rulings when presented with new evidence. The law of the case doctrine is merely a "discretionary rule of practice" when applied to a trial court's power to reconsider its own prior rulings. *People v. Morehead*, 2019 CO 48, ¶ 10 (citation omitted). It "provides that prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions." *Stockdale v. Ellsworth*, 2017 CO 109, ¶ 37 (quoting *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999)). But "a trial court is not inexorably bound by its own precedents." *Id.* at ¶ 37 (quoting *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 149 (Colo. 2007)). The doctrine allows a trial court to clarify or even revisit its prior rulings. *Id.* Because the trial court in this case was presented with new evidence that appeared to contradict the factual basis for the court's earlier ruling, the law of the case doctrine did not preclude the court from reconsidering it. *See Moore v. 1600 Downing St., Ltd.*, 668 P.2d 16, 19 (Colo. App. 1983) (the law of the case doctrine is generally inapplicable when there is new evidence before the court).

¶ 49    Second, the trial court erred by finding that the defense "could have called Officer Hillers to provide a second perspective" at the suppression hearing.  Although Officer Hillers was under subpoena, he was unable to appear at the hearing because he was sick with COVID-19.  Thus, the trial court was incorrect in finding that the defense could have called Officer Hillers at the hearing.  While the majority says that "defense counsel could have asked for a continuance or proceeded with the suppression hearing and requested an additional hearing date before trial at which Officer Hillers could testify," *supra* ¶ 21, the trial court made no such findings in its ruling.  The court said nothing about whether the defense had the option to continue the suppression hearing or could have secured his testimony on another date.  Instead, it appears the trial court mistakenly believed Officer Hillers was available to testify, but the defense chose not to call him at the hearing.

¶ 50    Finally, I disagree with the majority's view that Torres's counsel failed to exercise reasonable diligence because she could have asked for a continuance and obtained Officers Hillers's testimony on another date before trial.  *See supra* ¶ 21.  After

Officer Hart testified at the suppression hearing about what *he* observed, there was no reason to suspect that Officer Hillers's testimony would contradict Officer Hart's own observation. No police report or any other document in the record suggested that Officer Hillers would provide a different version of how the gun became visible — namely, that his physical contact caused Torres's shirt to rise and expose the gun. While it would have been prudent to secure Officer Hillers's testimony before the court's suppression ruling, I do not believe that reasonable diligence required the defense to request a continuance of the suppression hearing under these circumstances. This is precisely the type of situation that Crim. P. 41(e) was designed to address — when new evidence comes to light at trial that could not have been reasonably anticipated.

¶ 51    Indeed, a review of reported Colorado decisions shows that appellate courts have upheld the trial court's denial of untimely suppression motions only when the defense knew the supporting facts well before trial. *See Tyler*, 874 P.2d at 1040 (concluding that, because the defendant's "attorney conceded that he had knowledge of the [United States Army Investigation Command's] involvement in [the defendant's] arrest from the onset of the criminal proceedings,"

the applicability of the Posse Comitatus Act could have been identified through reasonable diligence soon after the case was filed); *Morgan v. People*, 444 P.2d 386, 387 (Colo. 1968) (affirming the trial court's decision not to hear a motion to suppress, which was filed on the afternoon before trial, because all the factual grounds raised were apparent from the time defense counsel first appeared); *People v. Hastings*, 983 P.2d 78, 83 (Colo. App. 1998) (affirming the denial of a motion to suppress, made during trial, as untimely because the defendant had been awakened by her son claiming that "a detective just tried to come through my window" and was therefore "on notice of the police conduct nearly from the moment it occurred"), *aff'd on other grounds sub nom., Gorman v. People*, 19 P.3d 662 (Colo. 2000); *People v. Hinchman*, 574 P.2d 866, 868 (Colo. App. 1977) (when the "defendant possessed prior to trial all pertinent information relative to the seizure of the container and its possible suppression," the trial court did not abuse its discretion by ruling that the motion to suppress, made during trial, was untimely), *aff'd in part and rev'd in part on other grounds*, 589 P.2d 917 (Colo. 1978); *see also* Crim. P. 41(e) ("The motion shall be made and heard before trial unless opportunity therefor did

not exist or the defendant was not aware of the grounds for the motion . . . .").  Unlike these cases, the record here does not show that, prior to trial, the defense was aware of Officer Hillers's testimony or had any reason to suspect he would contradict Officer Hart's account.

¶ 52    I therefore respectfully dissent in part.  I would remand the case for the trial court to reconsider its suppression ruling in light of Officer Hillers's trial testimony.  *See Morehead*, ¶ 16; *People v. Mack*, 895 P.2d 530, 537 (Colo. 1995) (reversing the suppression ruling in part and remanding for additional findings).  I otherwise concur with the rest of the majority's opinion.